1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

                            ----oo0oo----

11

12   JEANNE KITCHEN,                    CIV. NO. 2:14-01436 WBS EFB

13            Plaintiff,                MEMORANDUM AND ORDER RE: MOTION
                                        TO DISMISS AND MOTION FOR LEAVE
14        v.                            TO FILE FIRST AMENDED COMPLAINT

15   LODI UNIFIED SCHOOL DISTRICT,

16            Defendant.

17

18

19                          ----oo0oo----

20        Plaintiff Jeanne Kitchen brought this action against

21   defendant Lodi Unified School District alleging disability-based

22   discrimination, retaliation, and interference in violation of the

23   Americans with Disabilities Act ("ADA") and the Rehabilitation

24   Act.  Plaintiff seeks, among other relief, reimbursement for

25   health care premiums she paid as a result of her allegedly

26   wrongful exclusion from the school district's Early Retirement

27   Health Benefits program.  Defendant moves to dismiss several of

28   these claims.

                                    1

1  I.   <u>Factual and Procedural History</u>

2         Plaintiff worked as a school teacher for the defendant,

3  Lodi Unified School District, from 1991 to 2012.  (Compl. ¶¶ 13-

4  15.)  In September 2009, plaintiff was diagnosed with bipolar

5  disorder, and around the same time, she required surgery for a

6  back disability.  (<u>Id.</u> ¶ 14.)  Between September 2009 and the

7  summer of 2012, plaintiff missed work due to her disabilities.

8  (<u>Id.</u>)  She allegedly worked most of the 2010-2011 school year,

9  and worked in the fall semester for the 2011-2012 school year.

10  She did not work during the spring semester of 2011-2012 due to

11  disability.  (<u>Id.</u>)

12         By that time, plaintiff qualified for early retirement

13  from the school district.  (<u>Id.</u> ¶ 15.)  During the summer of

14  2012, plaintiff decided to exercise her option to retire, and she

15  submitted a letter of retirement on August 22, 2012.  (<u>Id.</u>)  Her

16  effective date of retirement was September 30, 2012.  (<u>Id.</u>)

17         Through its Early Retirement Health Benefits program,

18  defendant ordinarily pays for retirees' health coverage premiums.

19  (<u>Id.</u> ¶ 16.)  Plaintiff alleges that defendant excluded her from

20  the program based on the fact that she took unpaid days off prior

21  to retirement.  (<u>Id.</u>)  She alleges that, but for that time off,

22  she would have qualified for the Early Retirement Health Benefits

23  program.  (<u>Id.</u>)

24         Plaintiff brought this action under the ADA and

25  Rehabilitation Act seeking reimbursement of premiums paid as a

26  result of her exclusion from the Early Retirement Health Benefits

27  program, interest on that amount, and injunctive relief ordering

28  defendant to pay future premiums.  (Compl. at 8.)  She asserts

1  five causes of action: (1) disability-based discrimination in

2  violation of Title I of the ADA, 42 U.S.C. §§ 12112, et seq.; (2)

3  disability-based discrimination in violation of Title II of the

4  ADA, 42 U.S.C. §§ 12131, et seq.; (3) disability-based

5  discrimination in violation of the Rehabilitation Act, 29 U.S.C.

6  §§ 794, et seq.; (4) retaliation and interference in violation of

7  Title V of the ADA, 42 U.S.C. § 12203; and (5) retaliation in

8  violation of the Rehabilitation Act, 29 U.S.C. §§ 704, et seq.

9  (Compl. ¶¶ 25-45.)

10  II.   Defendant's Motion to Dismiss

11        Defendant moves to dismiss plaintiff's first and fourth

12  claims pursuant to Federal Rule of Civil Procedure 12(b)(1) on

13  the basis of Eleventh Amendment immunity and plaintiff's second

14  and fifth claims pursuant to Rule 12(b)(6) for failure to state a

15  claim on which relief can be granted.

16        On a motion to dismiss for failure to state a claim

17  under Rule 12(b)(6), the court must accept the allegations in the

18  complaint as true and draw all reasonable inferences in favor of

19  the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

20  overruled on other grounds by Davis v. Scherer, 468 U.S. 183

21  (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a

22  motion to dismiss, a plaintiff must plead "only enough facts to

23  state a claim to relief that is plausible on its face."  Bell

24  Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This

25  "plausibility standard," however, "asks for more than a sheer

26  possibility that a defendant has acted unlawfully," and where a

27  complaint pleads facts that are "merely consistent with a

28  defendant's liability," it "stops short of the line between

3

possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009) (quoting Twombly, 550 U.S. at 557).

    A. The Eleventh Amendment Precludes Plaintiff's First and
       Fourth Claims

       The Eleventh Amendment bars any suit against a state or
state agency absent a valid waiver or abrogation of its sovereign
immunity. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54
(1996); Hans v. Louisiana, 134 U.S. 1, 10 (1890) (holding that
the Amendment bars suits against a state by citizens of that same
state as well as suits brought by citizens of another state).
This immunity applies regardless of whether a state or state
agency is sued for damages or injunctive relief, Alabama v. Pugh,
438 U.S. 781, 782 (1978), and regardless of whether the
plaintiff's claim arises under federal or state law, Pennhurst
State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121, (1984).

       The Ninth Circuit has held that "Eleventh Amendment
immunity does not implicate a federal court's subject matter
jurisdiction in an ordinary sense," and thus, should be treated
as an affirmative defense for which "the public entity . . .
bear[s] the burden of proving the facts that establish its
immunity under the Eleventh Amendment." ITSI T.V. Prods., Inc.
v. Agric. Ass'ns, 3 F.3d 1289, 1291-92 (9th Cir. 1993) ("Eleventh
Amendment immunity, whatever its jurisdictional attributes,
should be treated as an affirmative defense."); see also Hill v.
Blind Indus. and Serv. of Md., 179 F.3d 754, 760 (9th Cir. 1999)
(concluding that Eleventh Amendment immunity is not a true
jurisdictional bar because it can be waived or forfeited by the
state).

4

1        In Board of Trustees of University of Alabama v.

2   Garrett, 531 U.S. 356 (2001), the Supreme Court held that the

3   Eleventh Amendment shields states from employment claims under

4   Title I of the ADA.  Id. at 360 (striking down Congress's

5   purported abrogation of Eleventh Amendment immunity as exceeding

6   its authority under Section 5 of the Fourteenth Amendment).  The

7   Ninth Circuit has extended Garrett's holding to Title V claims

8   that are premised on alleged violations of Title I.  See Demshki

9   v. Monteith, 255 F.3d 986, 988 (9th Cir. 2001) ("[T]he Court's

10  holding necessarily applies to claims brought under Title V of

11  the ADA, at least where . . . the claims are predicated on

12  alleged violations of Title I.").

13        California school districts, including the defendant,

14  are considered agents of the state and may assert Eleventh

15  Amendment immunity.  Belanger v. Madera Unified Sch. Dist., 963

16  F.2d 248, 253-55 (9th Cir. 1992) (holding that California's

17  scheme of centralized state control of and funding for public

18  school districts makes them immune from suit under the Eleventh

19  Amendment because the school district "is an agent of the state

20  that performs state governmental functions and . . . a judgment

21  would be satisfied out of state funds").  Plaintiff makes no

22  argument to the contrary.  Accordingly, the Eleventh Amendment

23  squarely precludes plaintiff's first claim for relief under Title

24  I of the ADA and fourth claim for relief under Title V of the

25  ADA.

26        B. Plaintiff Fails to State a Cognizable Claim for Relief

27           under Title II of the ADA

28           Individuals may not bring claims related to their

5

1  employment under Title II of the ADA.  Zimmerman v. Oregon Dep't
2  of Justice, 170 F.3d 1169, 1178 (9th Cir. 1999) ("[W]hen viewed
3  as a whole, the text, context and structure of the ADA show
4  unambiguously that Congress did not intend for Title II to apply
5  to employment.").  Title II pertains to "Public Services," id. at
6  1175, whereas employment claims are reserved for Title I, id. at
7  1172 ("Title I applies specifically to employment.").

8        This holding would appear to bar plaintiff's attempt to
9  sue her former employer under Title II.  But plaintiff argues
10 that her Title II claim is proper because it arises, not out of
11 her employment with defendant, but out of her exclusion from
12 defendant's Early Retirement Health Benefits Program, which
13 should be considered one of the "services, programs, or
14 activities" covered by Title II.  (Pl.'s Opp'n at 8 (Docket No.
15 10).)

16       Title II of the ADA provides that "no qualified
17 individual with a disability shall, by reason of such disability,
18 be excluded from participation in or be denied the benefits of
19 the services, programs, or activities of a public entity, or be
20 subjected to discrimination by any such entity."  42 U.S.C.
21 § 12132.  In Zimmerman, the Ninth Circuit interpreted the phrase
22 "services, programs, or activities" as applying "only to
23 'outputs' of a public agency, not to 'inputs' such as
24 employment."  Zimmerman, 170 F.3d at 1174 (citing Decker v. Univ.
25 of Houston, 970 F. Supp. 575, 580 (S.D. Tex. 1997)).  In defining
26 the scope of a public agency's "outputs," the court drew a line
27 between services that an agency makes "generally available" to
28 the public and the "inputs" required to provide those services:

6

Consider, for example, how a Parks Department would answer the question, "What are the services, programs, and activities of the Parks Department?" It might answer, "We operate a swimming pool; we lead nature walks; we maintain playgrounds." It would not answer, "We buy lawnmowers and hire people to operate them." The latter is a means to deliver the services, programs, and activities of the hypothetical Parks Department, but it is not itself a service, program, or activity of the Parks Department.

Id. at 1174.

The Ninth Circuit did not directly consider whether a retirement health benefits program falls on the input or output side of this line. However, it is clear that such a program is not generally available to the public. An individual becomes eligible for retirement health benefits as a direct result of his or her employment relationship with the school district. (See Compl. ¶ 30 ("As a former school teacher with more than 20 years of service, Plaintiff was qualified to participate in the Defendant's Early Retirement Health Benefits program . . . .").) Presumably, a school district's primary service is education, and it engages in the provision of retirement benefits only "as a means to deliver [] services, programs, and activities" relating to education. See Zimmerman, 170 F.3d at 1174.

Moreover, at least one other circuit has concluded that retirement benefits relate to an individual's employment with a public agency, not the "services, programs, or activities" of that agency. See Mary Jo C. v. N.Y. State & Local Ret. Sys., Civ. No. 09-5635 SJF ARL, 2011 WL 1748572, at *10-12 (E.D.N.Y. May 5, 2011) (holding that Title II does not apply to a plaintiff's claim for denial of disability retirement benefits because such a claim "clearly relate[s] to her employment with

7

1  that entity, as opposed to the programs and services the Library

2  offers to the public at large") aff'd in relevant part in Mary Jo

3  C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 168-72 (2d Cir.

4  2013).

5         Because plaintiff's claim arises from her employment

6  with defendant, she cannot bring it under Title II of the ADA.

7  Zimmerman, 170 F.3d at 1178.  Accordingly, the court must grant

8  defendant's motion to dismiss plaintiff's second claim.

9         C. Plaintiff Fails to State a Claim for Retaliation in

10            Violation of the Rehabilitation Act[1]

11        The Ninth Circuit has held that a retaliation claim

12  brought under the Rehabilitation Act "requires a plaintiff to

13  show: '(1) involvement in a protected activity, (2) an adverse

14  employment action and (3) a causal link between the two.'"  Coons

15  v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 887 (9th Cir.

16  2004) (quoting Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th

17  Cir. 2003)).  Defendant argues that plaintiff fails to allege

18  facts establishing involvement in a protected activity or a

19  causal link.  (Def.'s Mem. at 7-8 (Docket No. 7-1).)

20        With regard to the first required showing, a request

21

22        [1]   The Rehabilitation Act contains no anti-retaliation
    provision of its own.  Instead, it expressly incorporates the
23  ADA's anti-retaliation provision, 42 U.S.C. § 12203.  McCoy v.
    Dep't of Army, 789 F. Supp. 2d 1221, 1234 (E.D. Cal. 2011)
24  (Karlton, J.).  Accordingly, the court draws in part from the
    case law and requirements of that section, which provides that
25  "[n]o person shall discriminate against any individual because
    such individual has opposed any act or practice made unlawful by
26  this chapter or because such individual made a charge, testified,
    assisted, or participated in any manner in an investigation,
27  proceeding, or hearing under this chapter."  42 U.S.C.
    § 12203(a).
28

for accommodation of a disability can constitute involvement in a protected activity.  See Coons, 383 F.3d at 887 ("Coons was engaged in a protected activity when he requested that the IRS make reasonable accommodations for his alleged disability.").  However, to state a retaliation claim premised on a request for accommodation, a plaintiff must "allege[] facts which demonstrate that the defendants were aware of plaintiff's attempts to seek such accommodation."  Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 149 (2d Cir. 2002); see also Alex G. ex rel. Dr. Steven G. v. Bd. of Trs. of Davis Joint Unified Sch. Dist., 387 F. Supp. 2d 1119, 1128 (E.D. Cal. 2005) (Levi, J.) (requiring plaintiffs to show "the defendants knew [plaintiffs] were involved in the protected activity").

Plaintiff alleges she was denied eligibility based on "the time off she required as a reasonable accommodation for her disability."  (Compl. ¶ 44.)  However, the complaint is silent as to whether plaintiff actually made a request for time off as an accommodation for her disability or otherwise alerted the defendant of the need to accommodate her.  Because she fails to allege such a request, plaintiff falls short of showing that she engaged in an activity protected by the Rehabilitation Act.

Plaintiff's Complaint also fails to allege "a causal link" between her involvement in a protected activity and the defendant's adverse employment action against her.  See Coons, 383 F.3d at 887.  Plaintiff alleges "there is evidence that Defendant LUSD took affirmative and intentional steps to ensure that Plaintiff Kitchen would be excluded from the program," (Compl. ¶ 17), and she points to this statement in support of a

1  causal link, (see Pl.'s Opp'n at 10, 13).  But a fair reading of

2  this statement does not contain an allegation that defendant's

3  "affirmative and intentional steps" were taken because of

4  plaintiff's request for an accommodation or any other alleged

5  protected activity.  Nor does it point to any circumstantial

6  evidence of causation, such as her employer's knowledge of her

7  disability.  See Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th

8  Cir. 1987) ("Causation sufficient to establish the third element

9  of the prima facie case may be inferred from circumstantial

10  evidence, such as the employer's knowledge that the plaintiff

11  engaged in protected activities and the proximity in time between

12  the protected action and the allegedly retaliatory employment

13  decision" (citing Miller v. Fairchild Indus., Inc., 797 F.2d 727,

14  731 (9th Cir. 1986)).

15       Accordingly, because plaintiff fails to allege the

16  first and third elements of a prima facie retaliation claim, the

17  court must grant defendant's motion to dismiss.

18  III. Plaintiff's Motion for Leave to File First Amended Complaint

19       Plaintiff seeks leave to file a First Amended Complaint

20  ("FAC") pursuant Federal Rule of Civil Procedure 15(a) to address

21  the issues discussed above and add two additional defendants--

22  Superintendent Catherine Nichols-Washer and Director of Personnel

23  Neil Young--as state officials sued in their official capacity.

24  (See Pl's Mem. in Support of Mot. for Leave to File FAC at 1-2.)

25       A party may amend its complaint under Rule 15(a) "once

26  as a matter of course at any time before a responsive pleading is

27  served . . . or 21 days after service of a motion under Rule

28  12(b) . . ."  Fed. R. Civ. P. 15(a).  Thereafter, a party may

1  amend only "with the opposing party's written consent or the

2  court's leave."  Id.  "[T]he court should freely give leave [to

3  amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); see

4  also Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160

5  (9th Cir. 1989) ("We have stressed Rule 15's policy of favoring

6  amendments, and we have applied this policy with liberality.").

7  But "leave need not be granted where the amendment of the

8  complaint would cause the opposing party undue prejudice, is

9  sought in bad faith, constitutes an exercise in futility, or

10 creates undue delay."  Ascon Properties, 866 F.2d at 1160.

11        Defendant opposes plaintiff's request on the basis of

12 futility.  (Def.'s Opp'n to Pl.'s Mot. for Leave to File FAC at

13 3-7.)  "[A] proposed amendment is futile only if no set of facts

14 can be proved under the amendment to the pleadings that would

15 constitute a valid and sufficient claim or defense."  Miller v.

16 Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

17        As explained above, plaintiff's first, second, and

18 fourth claims against defendant are barred as a matter of law,

19 and the court can envision no set of facts that will allow

20 plaintiff to allege that defendant violated those respective

21 statutes.  Accordingly, any proposed amendment to those claims as

22 against defendant would be futile.

23        However, the court cannot conclude that no set of facts

24 would entitle plaintiff to relief under her fifth claim,

25 retaliation in violation of the Rehabilitation Act.  (Compl.

26 ¶ 42-45.)  Defendant appears to argue that this claim would be

27 barred by the Eleventh Amendment.  (Def.'s Opp'n to Pl.'s Mot.

28 for Leave to File FAC at 3-7.)  However, "Congress may exercise

11

1   its spending power to condition the grant of federal funds upon

2   the states' agreement to waive Eleventh Amendment immunity."

3   Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 820, amended,

4   271 F.3d 910 (9th Cir. 2001) (citing Coll. Sav. Bank v. Florida

5   Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 686

6   (1999)).  The Ninth Circuit has held that "the clear waiver

7   language of the Rehabilitation Act conditions the receipt of

8   federal funds under the Rehabilitation Act upon a state's

9   agreement to forgo the Eleventh Amendment defense" and "by

10  accepting federal Rehabilitation Act funds, California has waived

11  its sovereign immunity under the Rehabilitation Act."  Id. at

12  820.  Thus, the Eleventh Amendment does not necessarily bar

13  plaintiff from amending her fifth claim to correct its current

14  deficiencies and state a cognizable claim for relief.

15       Similarly, the court cannot conclude that no set of

16  facts would allow plaintiff to state a valid claim against the

17  additional defendants she proposes.  Plaintiff may sue state

18  officials for prospective injunctive relief under Ex parte Young,

19  209 U.S. 123 (1908).  See Garrett, 531 U.S. at 374 n.9 ("Those

20  standards [of Title I of the ADA] can be enforced by . . .

21  private individuals in actions for injunctive relief under Ex

22  parte Young.").  She should have a chance to bring those claims.

23       The court cautions, however, that to the extent that

24  plaintiff may seek to sue state officials in their official

25  capacity for relief properly characterized as retrospective, her

26  claims may be barred again by the Eleventh Amendment.  See

27  Papasan v. Allain, 478 U.S. 265, 276 (1986) ("Relief that in

28  essence serves to compensate a party injured in the past by an

12

1  action of a state official in his official capacity that was

2  illegal under federal law is barred even when the state official

3  is the named defendant."); see also Verizon Md. Inc. v. Pub.

4  Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) ("In determining

5  whether the doctrine of Ex parte Young avoids an Eleventh

6  Amendment bar to suit, a court need only conduct a

7  straightforward inquiry into whether [the] complaint alleges an

8  ongoing violation of federal law and seeks relief properly

9  characterized as prospective." (quotation marks and citation

10  omitted)); Edelman v. Jordan, 415 U.S. 651, 666 (1974) ("We do

11  not read Ex parte Young or subsequent holdings of this Court to

12  indicate that any form of relief may be awarded against a state

13  officer . . . so long as the relief may be labeled 'equitable' in

14  nature.").

15       IT IS THEREFORE ORDERED that defendant Lodi Unified

16  School District's motion to dismiss be, and the same hereby is,

17  GRANTED;

18       Plaintiff has twenty days from the date this Order is

19  signed to file an amended complaint, if she can do so consistent

20  with this Order.

21  Dated:  November 4, 2014

22

WILLIAM B. SHUBB
23  UNITED STATES DISTRICT JUDGE

24

25

26

27

28

13